UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-CV-00072-HBB

TIMOTHY P.[1]                                                                                              PLAINTIFF

VS.

KILOLO KIJAKAZI, ACTING COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                                   DEFENDANT

**MEMORANDUM OPINION
AND ORDER**

**A.  BACKGROUND**

Before the Court is the complaint (DN 1) of Timothy P. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 9) and Defendant (DN 12) have filed a Fact and Law Summary.  For the reasons that follow, the final decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to consider additional evidence and conduct additional proceedings to remedy the above identified defect in the original proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 7).  By Order entered August 15, 2022 (DN 8), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

## B.  FINDINGS OF FACT

On November 6, 2019, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 15, 188-91).  Plaintiff alleged that he became disabled on October 21, 2019, as a result of asthma, sleep apnea, deteriorating disc, back pain, and bilateral foot pain (Tr. 15, 68-69, 83, 225).  The application was denied initially on April 20, 2020, and upon reconsideration on June 12, 2020 (Tr. 15, 80, 95).  On July 27, 2020, Plaintiff filed a written request for a hearing (Tr. 15, 128).

On April 5, 2021, Administrative Law Judge D. Lyndell Pickett ("ALJ") conducted a telephone hearing due to the extraordinary circumstances presented by the COVID-19 Pandemic (Tr. 15, 33).  Plaintiff and his counsel, Richard Burchett, appeared by telephone (Tr. 33). Lavonne Brent, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated April 20, 2021, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-25).  At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 21, 2019, the alleged onset date (Tr. 17).  At the second step, the ALJ determined that Plaintiff has the following severe impairments: asthma and degenerative disc disease (Id.).  The ALJ also determined that Plaintiff's sleep apnea and obesity are "non-severe" impairments within the meaning of the regulations (Tr. 18).  At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), except he can occasionally climb

ladders, ropes, or scaffolds; frequently climb ramps and stairs; frequently stoop, kneel, crouch, and crawl; he can have occasional exposure to extreme cold and occasional exposure to humidity but no exposure to fumes, odors, dust, gases, or poor ventilation (Tr. 19). Additionally, the ALJ determined that Plaintiff is unable to perform any of his past relevant work (Tr. 23).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 23-24). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from October 21, 2019, through the date of the decision (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 182-84). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

### C. CONCLUSIONS OF LAW

#### STANDARD OF REVIEW

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a

case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton, 2 F.3d at 695-96.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20

C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

    1)    Is the claimant engaged in substantial gainful activity?

    2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

    3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

    4)    Does the claimant have the RFC to return to his or her past relevant work?

    5)    Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

## DISCUSSION

Plaintiff's sole challenge to the ALJ's decision concerns Finding No. 10 (DN 9 PageID # 529).   Essentially, Plaintiff argues the ALJ committed several reversible errors, each of which will be discussed in more detail below (Id. at PageID # 529-37).   Defendant disputes whether the ALJ committed error in most of the identified instances and acknowledges that in one instance the ALJ erred, but it was harmless (DN 12 PageID # 547-53).

As mentioned above, the ALJ found that Plaintiff has the RFC to perform a range of medium work due to certain nonexertional (postural and environmental) limitations (Finding No. 5, Tr. 19).   Of particular significance is the ALJ's environmental limitations, "[t]he claimant can have *occasional* exposure to extreme cold and *occasional* exposure to humidity but *no* exposure to fumes, odors, dust, gases, or poor ventilation" (Id.) (emphasis added).

Plaintiff begins his challenge by relying on Section 5 of Social Security Ruling (SSR) 85-15 to argue a "no exposure" to pulmonary irritants limitation is a rare finding that is in direct conflict to the ALJ's determination that he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (DN 9 PageID # 530-31, 537). Contrary to Plaintiff's suggestion, Section 5 does not discuss the frequency that "no exposure" to pulmonary irritants is imposed.  SSR 85-15, 1983-1991 Soc. Sec. Rep. Serv. 343, at *8 (Jan. 1, 1985).  It does, however, recognize that such an environmental limitation will have a considerable impact on a claimant's ability to work "because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions."  Id.  For this reason, Section 5 of SSR 85-15 instructs that "resolution of the issue will generally require consultation of occupational reference materials or the services of a [vocational expert]."  Id.  As the ALJ consulted with a vocational expert during the administrative hearing, the ALJ complied with his duty under SSR 85-15.

Next, Plaintiff argues that the vocational expert's testimony directly conflicted with information set forth in the Dictionary of Occupational Titles ("DOT") and its companion publication the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") (DN 9 PageID # 531-34, 537).  Plaintiff contends the ALJ committed reversible error when he failed to resolve these conflicts with the DOT and SCO (Id. at PageID # 534-35, 37) (citing SSR 00-4p).  In response, Defendant asserts that the ALJ satisfied his duty under SSR 00-4p by asking the vocational expert if any of her testimony conflicted with any information in the DOT and SCO (DN 12 PageID # 547-48) (citing Tr. 54).  Defendant points out that in response to this question, and in response to additional examination by both the ALJ

6

and Plaintiff, the vocational expert identified the conflicts and explained that her testimony is based on her training, experience, and observations about workplaces where the identified jobs are being performed (Id. at PageID # 548-49) (citing Tr. 55, 56-57, 60-61).

Notably, SSR 00-4p indicates that when a vocational expert provides testimony about the requirements of a job or occupation, the Administrative Law Judge has "an affirmative responsibility to ask about any possible conflict between" the vocational expert's testimony and information provided in the DOT. SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). When a vocational expert acknowledges that such a conflict exists, the Administrative Law Judge "will obtain a reasonable explanation for the apparent conflict." Id.; O'Neal v. Comm'r of Soc. Sec., 799 F. App'x 313, 317 (6th Cir. 2020).

The ALJ's first hypothetical question to the vocational expert sets forth the RFC determinations in Finding No. 5 (*compare* Tr. 19 *with* Tr. 52-53). More specifically, the first hypothetical question included the following environmental limitations, "*[o]ccasional* exposure to extreme cold and *occasional* exposure to humidity, *no* exposure to fumes, odors, dust[,] gases, poor ventilation" (Tr. 52-53) (emphasis added). After confirming that the hypothetical individual would not be able to perform any of Plaintiff's past work, the vocational expert addressed what jobs could be performed by the hypothetical individual (Tr. 53). Specifically, the ALJ testified:

> We have a job as a checker, with a DOT number of 369.684-026, medium exertional level, SVP: 2, national estimated numbers, 400,000. Sorter, DOT number 929.687-022, with a medium exertional level, with an SVP: 2, national estimated numbers, 19,000. Bagger, DOT number 361.687-018, with a medium exertional level, with an SVP: 2, national estimated numbers, 350,000.

(Id.).[2]  The ALJ asked four more hypothetical questions—involving the addition of certain nonexertional limitations to the restrictions set forth in the original hypothetical—to which the vocational expert responded (Tr. 53-54).

The following exchange then followed between the ALJ and the vocational expert:

> Q  Does any of your testimony concerning job descriptions and necessary skill and exertional requirements conflict with any of the information contained in the Dictionary of Occupational Titles or the Selected Characteristics of Occupations?
>
> A  Yes, Your Honor, the occasional climbing ladders, as well as the occasional exposure to extreme cold, heat, humidity, (INAUDIBLE), and poor ventilation, the absenteeism and no working with the public, as well as the -- well, no working with the public, all information is based on my training and experience, not specifically addressed by the DOT.
>
> Q  Okay, all right, and you may have already answered this question, but are all your answers based on your knowledge, skill, and training, as a Vocational Expert?
>
> A  Yes, Your Honor.

(Tr. 54-55).

Plaintiff then began to question the vocational expert about potential exposure to pulmonary irritants in the checker or marker occupation, DOT number 369.687-026 and his belief that there would be very few job environments that are entirely free of pulmonary irritants (Tr. 55-60).  The scope of Plaintiff's examination prompted the vocational expert to indicate her belief that the ALJ's hypothetical involved "occasional exposure" (Tr. 60).  At this point the ALJ interjected, "[n]o, it was no exposure to fumes, odors, dust, gases, poor ventilation" (Id.).  The vocational expert responded, "[o]kay, but even with that, yeah, I mean I do believe those jobs are

---

[2] The parties agree that the certified transcript may contain a typographical error as it indicates DOT number 369.684-26 instead of 369.687-026 for the "checker" occupation (DN 9 PageID # 533; DN 12 PageID # 545 n.3).

8

appropriate for the hypothetical given, even with occasional to no definitely" (Id.).  Plaintiff then asked, "[w]ell, occasional to no what?" (Id.).  The vocational expert responded, "[e]xposure to dust, fumes and odors, and poor ventilation" (Id.).

Plaintiff again pressed the vocational expert about the hypothetical including the restriction "no fumes, dust, poor ventilation" (Id.).  The vocational expert responded for the first time:

> I think it would be fair enough to say a reduction of numbers would be more appropriate, rather than just, you know, totally take out all the numbers, but yes, certainly a reduction of numbers.

(Id.).  The above response prompted the ALJ to re-ask the fourth hypothetical question, which involved a range of medium work; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, and crouching; *occasional* exposure to extreme cold, *occasional* exposure to humidity; *no* exposure to fumes, odors, dust, gases, and poor ventilation; and no working with the public (*compare* Tr. 60-61 *with* Tr. 54) (emphasis added).  The vocational expert responded, "[i]t would be the same jobs, and then it would be just reduction when we get down to the no fumes, and odors, and dust, of maybe 15 percent" (Tr. 61).  The ALJ then asked, "[o]kay, a reduction of 15 percent?  So, we'd take the numbers you gave before and multiply it by 85 percent, is that what you're saying?" (Id.).  The vocational expert answered, "[y]es, Your Honor" (Id.).

Next, the ALJ asked the vocational expert how the work environment air quality for these occupations compared to the average home (Tr. 62).  The vocational expert opined that the air quality for all three jobs would be comparable to a regular home with air condition (Id.).  Plaintiff then asked the vocational expert about contact with pulmonary irritants—such as lotions, perfumes, dust, smoke, and fumes—that are on the bodies or clothing of other employees in the work environment who may come within five feet of the hypothetical person (Tr. 62-64).  The

9

vocational expert indicated that a 15 percent reduction in the number of jobs in each occupation should take care of such contact because "it's so subjective, you know, amongst different employers" (Tr. 64). The ALJ finished off his examination by asking, "[a]nd are all your answers based on your knowledge, skill and training as a Vocational Expert, including the additional testimony?" (Tr. 65). The vocational expert responded, "[y]es, Your Honor" (Id.).

      The above excerpts from the hearing transcript indicate the ALJ complied with SSR 00-4p by asking the vocational expert whether any of her testimony concerning the three identified occupations conflict with any of the information contained in the DOT or the SCO (Tr. 54). The vocational expert responded in the affirmative and explained that the information was based on her training and experience (Tr. 54-55). When the ALJ asked whether all of the vocational expert's answers are based on her knowledge, skill, and training, the vocational expert responded in the affirmative (Tr. 55). After the ALJ addressed the vocational expert's confusion—concerning the degree of limitation that applied to pulmonary irritants—and obtained the revised vocational opinion discussed above, the ALJ again asked and the vocational expert confirmed that all her answers, including those set forth in the additional testimony, were based on the vocational expert's knowledge, skill, and training as a vocational expert (Tr. 65). For the above reasons, the record shows the ALJ complied with his affirmative responsibility under SSR 00-4p to inquire about any possible conflict between the vocational expert's testimony and the information provided in the DOT and SCO. Moreover, the ALJ satisfied his duty to obtain from the vocational expert a "reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704, at *4.

The analysis, however, does not end here because SSR 00-4p imposes an additional responsibility on the ALJ. Specifically, SSR 00-4p directs:

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

Id.

Finding No. 10 reads, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a))" (Tr. 23). In the discussion that follows, the ALJ acknowledged seeking testimony from the vocational expert and commented as follows:

> To determine the extent to which these limitations erode the unskilled medium occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as checker, of which there are approximately 400,000 jobs in the national economy. The vocational expert also cited the representative occupations of sorter, of which there are approximately 19,000 jobs in the national economy, and bagger, of which there are approximately 350,000 jobs in the national economy.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

11

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(Tr. 24). Essentially, the ALJ summarized the vocational expert's response to the first hypothetical question. He totally ignored the rest of the hearing transcript. Because of this significant omission, the ALJ failed to mention that the vocational expert subsequently reduced the job numbers by 15 percent to account for the more restrictive limitation of "no" pulmonary irritants. This means substantial evidence in the record does not support the job numbers set forth in the ALJ's decision. As the decision indicates the ALJ relied on these job numbers to conclude there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Finding No. 10 is not supported by substantial evidence in the record.

Equally concerning, the ALJ's paragraph discussing his compliance with SSR 00-4p is wholly inaccurate. It completely disregards the vocational expert's testimony which made apparent the conflict between her testimony and information provided in the DOT and the SCO. Additionally, the paragraph ignores the vocational expert's reasonable explanation for the apparent conflict. And, most importantly, the paragraph shows that the ALJ failed to comply with his responsibility under SSR 00-4p to resolve the apparent conflict before relying on the vocational expert's evidence to support his decision that Plaintiff is not disabled. *See* SSR 00-4p, 2000 WL 1898704, at *4; Barry W.H. v. Comm'r of Soc. Sec., No. 2:21-CV-5426, 2022 U.S. Dist. LEXIS 150801, at *12 (S.D. Ohio Aug. 22, 2022), *report and recommendation adopted,* No. 2:21-CV-5426, 2022 U.S. Dist. LEXIS 184792 (S.D. Ohio Oct. 7, 2022) (failure to question vocational

expert about apparent conflict and failure to explain basis for concluding there was no conflict, are contrary to obligations under SSR 00-4p). Due to the ALJ's failure to comply with SSR 00-4p, remand on this basis is warranted. See Barry W.H., 2022 U.S. Dist. LEXIS 150801, at *12-13 (survey of cases remanding with instructions to resolve the apparent conflict); Clevenger v. Comm'r of Soc. Sec., No. 2:19-CV-4512, 2020 U.S. Dist. LEXIS 77028, at *31 (S.D. Ohio May 1, 2020) (dicta recognizing where a conflict is apparent and there has been a failure to resolve or explain the conflict, remand may be appropriate).

Defendant acknowledges the ALJ's mistake but suggests it is harmless because it is a typographical, or scrivener's, error and the hearing transcript provides substantial evidence to support the ALJ's decision (DN 12 PageID # 550-51). This Court has noted that:

> Black's Law Dictionary defines "scrivener's error" as a synonym for "clerical error." A "clerical error" is one "resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination." Examples of clerical, or "scrivener's," errors include "omitting an appendix from a document; typing an incorrect number; mistranscribing a word; and failing to log a call."

Blume v. Small Bus. Admin., No. 1:17-CV-00156-GNS-HBB, 2017 U.S. Dist. LEXIS 233767, at *1-2 (W.D. Ky. Nov. 7, 2017) (cleaned up). The ALJ's paragraph discussing his compliance with SSR 00-4p does not involve a typographical, or scrivener's error. The hearing transcript shows that the conflict was apparent to the ALJ, and he complied with SSR 00-4p by obtaining from the vocational expert a reasonable explanation for the conflict. The ALJ erred because he failed to comply with his responsibility under SSR 00-4p to explain in the decision how he resolved this apparent conflict before relying on the vocational expert's evidence to support his decision that Plaintiff is not disabled. Stated differently, the ALJ's error frustrates meaningful review of his

decision that Plaintiff is not disabled. Accordingly, Defendant's harmless error argument is without merit. For the above reasons, the undersigned concludes that the final decision of the Commissioner should be reversed, and the case remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to consider additional evidence and conduct additional proceedings to remedy the above identified defect in the original proceedings. *See* Faucher v. Sec'y of Health & Hum. Servs., 17 F.3d 171, 175 (6th Cir. 1994).

Plaintiff also asserts that the ALJ committed further error by failing to resolve conflicts within the vocational expert's own testimony and by failing to properly cite the numbers of jobs the vocational expert identified (DN 9 PageID # 536-37). The undersigned need not address this claim as a basis already exists for reversing the final decision of the Commissioner and remanding the matter to the Commissioner for further proceedings.

### D.  ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED,** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to consider additional evidence and conduct additional proceedings to remedy the above identified defect in the original proceedings.

H. Brent Brennenstuhl
United States Magistrate Judge
July 6, 2023

Copies:    Counsel